UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Epic Communications, Inc., | : | Case No. 1:07CV3243 |
| Plaintiff | : | |
| | : | Magistrate Judge David S. Perelman |
| v. | : | |
| | : | |
| Progressive Communications, Inc., | : | **MEMORANDUM OPINION** |
| | : | |
| Defendant | : | |

Currently pending is the motion of defendant Progressive Communications, Inc. ("Progressive"), pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure to dismiss the complaint for lack of personal jurisdiction, and because this matter is not properly venued in the Northern District of Ohio pursuant to 28 U.S.C. §§ 1391 and 1406.

The plaintiff, Epic Telecommunications, Inc. ("Epic"), of Cleveland, Ohio, initiated this action in Cuyahoga County Common Pleas Court against defendant Progressive, of Milledgeville, Georgia, alleging that defendant had failed to pay money owed pursuant to a contract between the parties.

The sparse complaint alleges:

1. Defendant owes Epic Communications, Inc., on several accounts, Invoice attached hereto, and marked Exhibit A, the sum of $330,749.21.

2. All services provided to defendant were provided in Cuyahoga County Ohio.

3. WHEREFORE, as to Count I, Plaintiff Epic prays for judgment for a sum of $330,749.21 with Court costs of $100.00, and legal fees of $400.00.

1

On October 22, 2007, this case was removed to this federal court based upon diversity jurisdiction, in accordance with the allegation that the defendant is, and was at the time of the actions referenced in the complaint, a Georgia corporation, and the plaintiff is, and was at the time of the actions referenced in the complaint, "a defunct Ohio corporation."

Progressive alleges that as a Georgia corporation without ties to Ohio it is not amenable to the exercise of personal jurisdiction under the Ohio long-arm statute, Section 2307.382 of the Ohio Revised Code. According to Progressive, Epic has not demonstrated any facts which show that Progressive availed itself of the privilege of conducting business within the State of Ohio. Progressive asserts that there is no proof of *any* contacts whatsoever between Progressive and the State of Ohio, let alone the minimum contacts required in order for this Court to exercise in personam jurisdiction over it as a non-resident defendant.

Once there has been a Rule 12(b)(2) challenge to personal jurisdiction, it is the plaintiff's burden to demonstrate that personal jurisdiction exists. Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002). A court presented with such a challenge can take one of three procedural paths: (1) the motion may be decided upon affidavits alone; (2) the court may permit discovery to assist in rendering its decision; or (3) the court may conduct an evidentiary hearing to resolve any factual questions which may have been presented. Theunissen v. Matthews d/b/a Matthews Lumber Transfer, 935 F.2d 1454, 1458 (6th Cir. 1991).

Where, as in the present case, the motion is to be considered without evidentiary hearing or further discovery, it is the plaintiff's burden to make a prima facie showing of jurisdiction, Hunter v. Mendoza, 197 F.Supp.2d 964, 967 (N.D.Ohio 2002) (J.Carr) (citing Glasstech, Inc. v. TGL Tempering Sys., Inc., 50 F.Supp.2d 722, 725 (N.D.Ohio 1999)), not by standing on pleadings alone, but rather by submitting an affidavit or otherwise setting forth specific facts showing the court has jurisdiction,

2

Theunissen, supra at 1458. Those pleadings and affidavits must be considered in a light most favorable to the plaintiff. Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1272 (6th Cir. 1998) (citing CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996)). If, upon consideration of all the facts submitted, the plaintiff has failed to demonstrate a prima facie case for personal jurisdiction, then dismissal is warranted. CompuServe, Inc., supra at 1262.

In determining questions regarding exercise of personal jurisdiction over non-resident defendants in diversity cases district courts must look to the law of the forum state. Theunissen, supra at 1459. In so doing, the question becomes whether service of process can be executed upon the non-resident defendant under the long-arm statute of the forum state and whether exercise of personal jurisdiction over the non-resident defendant would deny that defendant's due process rights accorded by the Fifth and Fourteenth Amendments to the United States Constitution. Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002) (quoting Michigan Coalition of Radioactive Materials Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992)).

The Sixth Circuit Court of Appeals has recognized the Ohio Supreme Court ruling in Goldstein v. Christiansen, 70 Ohio St.3d 232, 638 N.E.2d 541, 545, n.1 (1994), that the Ohio long-arm statute does not extend to the limits of due process. Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998). In Goldstein, the court held that a two-step analysis is to be applied in determining whether personal jurisdiction exists under Ohio law: "(1) ...whether the state's 'long-arm' statute and the applicable Civil Rule confer personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." Id. at 543. It is critical that both elements of the test are satisfied. Ibid.

This two-part test has been applied by district courts applying Ohio law. See, Hunter v.

3

Mendoza, supra, ("To determine whether personal jurisdiction exists over non-resident defendants, the court engages in a two-step analysis: 1) the defendant must be amenable to suit under the Ohio Long Arm statute; and 2) the exercise of personal jurisdiction over defendant must not violate due process."); Rose v. Rusnak, unreported, Case No. C-1-01-462, 2002 U.S.Dist. LEXIS 7369 (S.D. Ohio 2002) (J. Weber) ("That approach [Goldstein] requires the Court to determine the applicability of the Ohio long-arm statute and then, if applicable, to separately determine whether the exercise of in personam jurisdiction would satisfy due process."); Matrix Essentials, Inc. v. Harmon Stores, Inc., 205 F.Supp.2d 779, 784 (N.D.Ohio 2001) (J.Wells) ("[I]t is clear that Ohio's long arm statute should be applied in a manner consistent with the Ohio Supreme Court's ruling in Goldstein."); Oasis Corp. v. Judd, 132 F.Supp.2d 612, 617 (S.D.Ohio 2001) (J. Marbley) ("There is a two-step analysis to determine personal jurisdiction under the laws of Ohio, the forum state in this case...Ohio's long-arm statute does not extend jurisdiction fully to the limits of due process...Thus, merely finding that jurisdiction comports with federal due process standards is not sufficient in Ohio; rather, both prongs of the analysis must be satisfied."); and Kobill Airways v. National Flight Services, Inc., 92 F.Supp.2d 689, 690-91 (N.D.Ohio 2000) (J. Katz) ("If state law grants the Court in personam jurisdiction, the Court must then determine whether such jurisdiction comports with the due process requirements of the United States Constitution...[T]he Ohio long-arm statute does not extend personal jurisdiction to the limits of due process.").[1]

The Ohio long-arm statute, Section 2307.382 of the Ohio Revised Code, provides in pertinent

---

[1] While a few cases have held that Ohio's long-arm statute does extend to the limits of due process and, therefore, have merged the two inquiries to only determine whether the assertion of personal jurisdiction violates constitutional due process, those cases are premised upon pre-Goldstein authorities. See Nationwide Mutual Insurance Co. v. Tryg International Insurance Co., 91 F.3d 790, 793 (6th Cir. 1996); Norcold, Inc. v. Greg Lund Products, 109 F.Supp.2d 819, 821-23 (S.D.Ohio 2000) (J.Rice); and Suarez Corporation Industries v. McGraw, 71 F.Supp.2d 769, 774 (N.D.Ohio 1999) (J.Gwin).

4

part:

>  (A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>  (1)  Transacting any business in the state;
>
>  * * * * *
>
>  (C)  When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Ohio courts recognizing the breadth of the phrase "transacting any business," have noted that cases addressing Ohio's long-arm jurisdiction cannot be generalized due to their "'highly particularized fact situations.'" <u>Clark v. Connor</u>, 82 Ohio St.3d 309, 312-313, 695 N.E.2d 751 (1998), citing <u>Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.</u>, 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 480 (1990); <u>U.S. Sprint Communications Co. v. Mr. K's Foods, Inc.</u>, 68 Ohio St.3d 181, 183-184, 624 N.E.2d 1048, 1051 (1994).

In opposing the motion, Epic argues that there is personal jurisdiction over Progressive under the Ohio long-arm statute by virtue of the fact that "Epic's services were provided in Cleveland, Ohio via fax, e-mail, U.S. Mail or FedEX," and that under the parties' contract Progressive's "payment was due at Epic's headquarters in Cleveland, Ohio." According to Epic, the contract between these parties was sent to Ohio in order for Epic to execute it, and it "required Epic to perform ALL work in Ohio." Epic argues that Progressive "reached out" to Epic by calling via telephone and requesting Epic's assistance. Epic further contends that all the foregoing provided evidence of "continuing relationships and obligation."

A contract with an out-of-state resident, standing alone, is insufficient to establish minimum contacts. <u>Packaging Engineering v. Werzalit</u>, Case No. 3:07CV1651, 2008 U.S.Dist. LEXIS 19243,

5

*8-*9 (N.D.Ohio March 12, 2008) (Magistrate Judge Vernelis K. Armstrong), citing Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).  In that case it was held that the fact that most communications between the parties were conducted via phone or mail did not tend to show significant contact with the forum state, but rather was merely indicative of "sporadic events with the forum" which were not found to be significant enough to establish the minimum contacts necessary for personal jurisdiction.  Similarly, in this case the fact that the communications between these parties were conducted via phone or mail does not satisfy this Court that such contacts were significant enough to demonstrate that Progressive was "carrying on" business in Ohio or that there was a significant and continuing obligation, so as to establish minimum contacts for purposes of demonstrating personal jurisdiction. Id. at *9-*10.  It is the actions of the defendant which determine whether there is a "substantial connection" with the forum state so as to confer personal jurisdiction.  Burger King Corp. v. Rudzewicz, supra at 475.

     Based on the foregoing, this Court agrees with Progressive's assertion that Epic's focus on where Epic rendered its services and whether or not Progressive communicated with Epic via fax, mail or telephone while Epic was located in Ohio, are immaterial to the question of personal jurisdiction over Progressive, as it is Progressive's actions which determine whether a connection to the forum state is substantial enough to confer personal jurisdiction.  Here, in the course of serving as a vendor which provided technology equipment to Georgia school districts, Progressive would approach those school districts and inform them of federal grants, referred to as E-Rate grants, available to them for the acquisition of technology equipment by school districts.  Progressive's agents, who acted as independent contractors in the State of Georgia, sought consulting services to be provided by Epic on those E-Rate grants.  Epic merely relayed information to Progressive to facilitate the work being performed by Progressive in Georgia.

This Court is not convinced otherwise by Epic's reliance on <u>Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.</u>, <u>supra</u>.  In that case a Georgia corporation allegedly defaulted on a lease agreement between it and an Ohio-based limited partnership, causing the Ohio partnership to sue in Ohio to recover "leasehold charges" due and owing to it.  Despite the fact that the lease agreement in that case stated that Kentucky law should control any disputes, the court held that the defendant should have expected to appear in Ohio court for each of several reasons, including the fact that the negotiations were conducted by calls to and from Ohio, the lease was mailed to Ohio, and the lease payments were to be sent to Ohio, as were "common area maintenance" costs and "merchants association" fees.  In addition, the defendant/lessee was required to pay not only regular rental payments but also a percentage of gross sales if sales reach a fixed level, which in turn required them to submit monthly and annual sales reports to the lessor.  Most notably, the lease agreement was long-term and ongoing for a period of ten years, and it deprived the lessee of "unfettered control of its retail sales and rental operation," as evidenced by the fact that the lessee was required to obtain certain approvals from the lessor, and the lease restricted or regulated many activities.  <u>Id</u>. at 78.

That case is distinguishable from the present case in one pivotal aspect— Epic had no say in the out-of-state business interactions between Progressive and its school districts, whereas the lessor in Kentucky Oaks did control certain aspects of the lessee defendant's retail sales business in the forum state of Ohio.  Epic merely provided information to Progressive which could assist it in its business dealings with those school districts.  In this Court's opinion, that mere transfer of information via telephone and fax, during the course of a short-term project, was not the type of "substantial connection" with the forum state so as to confer personal jurisdiction.

This Court finds that even considering the pleadings and affidavits in a light most favorable to

the plaintiff, the plaintiff has failed to establish a prima facie case of jurisdiction as a consequence of the inability to satisfy the requisite showing under the Ohio long-arm statute. Having failed in that regard, there is no need to consider whether exercise of personal jurisdiction would violate due process considerations.

In light of all the foregoing, this Court finds that there is no personal jurisdiction over Progressive under the Ohio long-arm statute. Consequently, Progressive's motion to dismiss for lack of personal jurisdiction will be granted.[2]

                                               s/DAVID S. PERELMAN
                                               United States Magistrate Judge

DATE: April 30, 2008

---

[2] It follows that having determined that this federal court lacks personal jurisdiction over Progressive, there is no need to address defendant's argument that this case is not properly venued in this district.